IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN E. SIMMONS,

                Plaintiff,

v.                                            OPINION and ORDER

KILOLO KIJAKAZI,
Acting Commissioner of                            20-cv-876-jdp
Social Security,[1]

                Defendant.

---

Plaintiff John E. Simmons seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Simmons was not disabled within the meaning of the Social Security Act. Simmons contends that the administrative law judge (ALJ) erred in two ways: by discounting Simmons's subjective symptoms; and by relying on the testimony of vocational expert about the number of jobs available for a worker with Simmons's residual functional capacity.

Simmons suffers back pain from well-documented degenerative disc disease, which limits his ability but does not necessarily preclude employment. The court concludes that the ALJ adequately explained why he discounted Simmons's description of his symptoms. And the court discerns no error in the ALJ's reliance on the testimony of the vocational expert. Contrary to Simmons's argument here, the vocational expert's testimony does not conflict with the Dictionary of Occupational Titles, and his opinions were adequately supported and explained.

---

[1] The court has updated the caption pursuant to Federal Rule of Civil Procedure 25(d).

The court concludes that the ALJ's finding that Simmons was not disabled is supported by substantial evidence, and the court will affirm the commissioner's decision.

BACKGROUND

Simmons applied for disability insurance benefits alleging disability beginning in November 2014. The claim was denied initially and on reconsideration; Simmons requested a hearing before an ALJ. Prior to the hearing, Simmons amended his onset date to October 10, 2017. R. 192.[2] Following the hearing, at which Simmons was represented by counsel, the ALJ determined that Simmons was not disabled through his date last insured, December 31, 2019.

The ALJ found that Simmons suffered from three severe impairments: lumbar degenerative disc disease; lumbar facet arthopathy status-post lumbar microdiscectomy; and obesity. The ALJ also found a number of non-severe physical impairments that did not result in any functional limitations lasting at least 12 months. The ALJ found that Simmons had no limitations in the four areas of mental functioning as of the amended onset date. But the ALJ did ascribe to Simmons a moderate limitation in concentration, persistence, or pace as of July 16, 2019, to account for increased pain caused by the worsening of his disc disease. The ALJ found that Simmons did not meet or equal any listed disability.

The ALJ determined that through July 15, 2019, Simmons had the residual functional capacity (RFC) to perform light work with additional limitations to address the effects of his disc disease and his medication:

> After careful consideration of the entire record, the undersigned finds that, from the claimant's amended alleged onset date through July 15, 2019, the claimant had the residual functional

---

[2] Record cites are to the administrative transcript located at Dkt. 11.

> capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and never crawl. The claimant could not work at unprotected heights or around hazardous machinery. The claimant was not to perform commercial driving. He could only occasionally reach overhead bilaterally. The claimant was to be allowed the use of a cane on uneven terrain or with prolonged ambulation, and he could use his contralateral upper extremity to lift and carry exertional amounts. The claimant was to avoid concentrated exposure to extreme cold, heat, humidity, wetness, and pulmonary irritants. He was to avoid concentrated exposure to vibration and his work was to be performed on a flat, even surface.

R. 16.

The ALJ found that Simmons's disc disease worsened in July, 2019, as shown by an MRI showing greater disc protrusion than in 2017. *Id.* (citing R. 879). Accordingly, the ALJ ascribed to Simmons a more restrictive RFC as of July 16, 2019, limiting Simmons to sedentary work with additional limitations:

> After careful consideration of the entire record, the undersigned finds that, from July 16, 2019, through the date last insured, the claimant had additional residual functional capacity limitations as follows: sedentary work as defined in 20 CFR 404.1567(b), and the claimant could frequently handle and finger bilaterally. The claimant was to have a sit/stand option at will, which would not have taken him off task. The claimant was not to engage in fast-paced production work such as assembly line or work where a machine set the pace; his work was to be of a variable rate. The claimant was not to have had strict production quotas or hourly requirements, but only end-of-day work goals.

R. 19.

At the hearing, the ALJ posed hypotheticals to the vocational expert reflecting the limitations that the ALJ ultimately adopted in the two RFCs. The expert testified that there were jobs available for workers with those RFCs. For the first RFC, the expert identified the jobs of order clerk (food and beverage), document preparer, and telephone information clerk.

3

For the second more restrictive RFC, the expert identified the jobs of document preparer, preparer, and addresser. Each of these had from 25,000 to 50,000 positions available in the national economy.

The ALJ concluded that Simmons could perform a significant number of jobs available in the national economy. The Appeals Council denied Simmons' request for review, so the ALJ's decision became the final decision of the commissioner. R. 1.

Simmons now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

### A. The ALJ's assessment of Simmons's subjective complaints

Simmons contends that the ALJ wrongly assessed his subjective complaints. An ALJ's evaluation of the claimant's testimony is entitled to deference because the ALJ is in the position to actually hear and assess the witnesses. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). The court will overturn the ALJ's assessment of the claimant's testimony only if it is patently wrong and lacks any explanation or support. *Elder v. Astrue,* 529 F.3d 408, 413–14 (7th Cir. 2008).

Simmons makes three main arguments regarding his subjective symptoms, primarily leg and back pain. None is persuasive.

Simmons's first argument is that the ALJ failed to support her evaluation by citing specific evidence in the record. Dkt. 17, at 6. But this simply wrong. The ALJ cited, at R.17, Simmons's pain questionnaire, R. 241–43, and his hearing testimony, which describe Simmons as extensively incapacitated. The ALJ accepted Simmons's assertion that he suffered from pain but did not credit Simmons's testimony about the extent of his incapacitation. The ALJ cited several specific pieces of evidence that contradicted Simmons's testimony. For example, the ALJ cited treatment notes from February 10, 2015, R. 421, two weeks after his microdiscectomy surgery. As the ALJ pointed out, R. 18, Simmons reported doing well, and examination showed normal gait and good lower extremity strength. The ALJ reviewed and cited subsequent records from after the amended onset date. An updated MRI from October 2017 showed no significant nerve root impingement. R. 734. A consultative examination in March 2018 showed normal musculoskeletal findings. R. 833. In a treatment note from July 2, 2019, Simmons reported that he had been doing well since his surgery. R. 855.

The ALJ recognized that Simmons's degenerative disc disease worsened in July 2019, when an MRI showed worsening disc protrusion. R. 19 (citing R. 879). But the ALJ looked to treatment notes from October 2019 showing that Simmons reported only moderate pain, R. 883, and that Simmons elected to proceed with relatively conservative treatment, which he tolerated well, R. 886. His doctor noted that Simmons could consider an epidural steroid injection if he was not doing better, *id.*, and it does not appear that Simmons requested any further treatment. The ALJ cited ample evidence in the record to support his assessment of Simmons's testimony about his symptoms.

5

Simmons's second argument is that the ALJ committed the "fundamental error" of equating Simmons's activities of daily living with employability. This argument mischaracterizes the ALJ's decision. Contrary to Simmons's brief, Dkt. 17, at 7, the ALJ did not cite Simmons's television watching or video game playing at all. The ALJ cited Simmons's driving and movie watching to support the finding that Simmons had reasonable powers of attention, concentration, and judgment. R. 15. The ALJ also cited Simmons's activities of daily living (as presented by Simmons's wife) to assess statements made by Simmons himself in the records of the Department of Vocational Rehabilitations. R. 22. The bottom line is that the ALJ did not equate Simmons's ability to perform some activities of daily living with the capacity for full-time employment. The ALJ correctly considered Simmons's activities of daily living to evaluate his statements about the severity of his symptoms and limitations. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Simmons's third argument is that the ALJ failed to account for the side-effects of Simmons's medication. Dkt. 17, at 9. Again, this mischaracterizes the ALJ's decision, which acknowledged that his medications made him sleepy. R. 19. Simmons's sleepiness was accounted for in the first RFC, which restricted his climbing, working at heights, working around machinery, and commercial driving. R. 16. The second RFC included all the limitations in the first, and further accommodated Simmons's sleepiness by restricting him to non-paced sedentary work.

The court's task here is not to reweigh the evidence and judge for itself whether the claimant's allegations are persuasive. The question is whether the ALJ's finding that Simmons's subjective symptoms were not as severe as he claimed is supported by substantial evidence. The court concludes that it was.

**B. The vocational expert's testimony regarding available positions**

At the hearing, in response to a series of hypothetical questions from the ALJ, the vocational expert testified about jobs available for a person with Simmons's limitations. Under Social Security regulations, the ALJ has an affirmative duty to resolve any apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). Simmons contends that the expert's testimony conflicts with the Dictionary, and thus the ALJ's conclusion about the number of jobs available to Simmons is not supported by substantial evidence.

The first problem with Simmons's conflict argument is that there was no apparent conflict between the vocational expert's testimony and the Dictionary. The ALJ began the hearing by asking the expert to identify any conflicts with the Dictionary or the Selected Characteristics of Occupations (SCO). R. 64. The expert did not identify any conflicts, and Simmons's attorney did not question the expert about any conflicts with the Dictionary or SCO, nor did he object to the expert's testimony. The ALJ has an affirmative duty to resolve any apparent conflict between the expert's testimony and the Dictionary. But in the absence of an apparent conflict, the claimant forfeits arguments about the reliability of the expert's testimony by failing to object to the VE's testimony at the hearing. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). The court deems Simmons's conflict argument forfeited, but it would fail on the merits even if not forfeited.

Simmons alleges two conflicts, one involving reaching and the other involving pace.

As for reaching, Simmons contends that there is a conflict involving the reaching requirements of the order taker and telephone information clerk jobs proposed by the vocational expert. In the first RFC, the ALJ limited Simmons to only "occasional overhead

7

reaching," which means up to one-third of the workday. Simmons says that the jobs of order clerk and telephone information clerk require "bilateral reaching, which is precluded by Plaintiff's RFC at the frequency listed in the DOT." Dkt. 17, at 13. But bilateral reaching isn't precluded by the RFC ascribed to Simmons; only *overhead* reaching is limited. Simmons has adduced no evidence of how much overhead reaching is required in any of the jobs proposed by the vocational expert.

At the hearing, the vocational expert explained that his testimony about overhead reaching relied on information not in the Dictionary. The ALJ asked the expert to acknowledge that some of his testimony about pacing and attendance requirements went beyond information in the Dictionary and was based on the expert's experience. R. 68. The expert agreed, and he took the opportunity to explain that the Dictionary does not specify the "plane" of reaching, and that his testimony about "occasional bilateral overhead reaching" was also based on a combination of his experience in placing disabled workers and his review of job task requirements.[3] R. 68–69. In the absence of any challenge to this testimony, the ALJ was entitled to rely on it. There was no conflict between the expert's testimony and the Dictionary, and the expert explained where he got the information that wasn't in the Dictionary.

As for pacing, Simmons contends that the preparer and addresser positions require working at a set pace, whereas the ALJ's second RFC precluded Simmons from fast-paced production work, requiring work at a variable rate. Dkt. 17, at 14. But Simmons doesn't cite any specific provision of the Dictionary that shows the pace requirements of the preparer and

---

[3] As the government points out, Dkt. 19, at 20 n.5, the vocational expert's explanation is transcribed using the word "plain," but the context makes clear that the expert was describing the "plane" of reaching, meaning whether the reaching was overhead or horizontal.

addresser positions; the argument is so underdeveloped that the court deems it forfeited. The commissioner provides a fuller explanation. Dkt. 19, at 22–23. The preparer and addresser positions are ascribed temperament factor "R," which according to the Revised Handbook for Analyzing Jobs means "repetitive."[4] Jobs with the "repetitive" temperament involve routine tasks repeated according to "set procedures, sequence, *or* pace." *Id*. (emphasis added). So even if Simmons is correct that the preparer and addresser positions have a generally "repetitive" temperament, it does not mean that those positions necessarily require fixed-pace work. Simmons did not respond to the Commissioner's explanation in his reply brief, which would be reason to deem the point conceded.

There was no obvious conflict between the vocational expert's testimony about the pace requirements of the preparer and addresser jobs and the Dictionary or the SCO. The expert explained that his testimony about the pace requirements of jobs went beyond the Dictionary and was based on his experience. R. 68. The expert's explanation was not elaborate, but it went completely unchallenged at the hearing. The ALJ did not err in relying on the expert's unchallenged testimony that a worker limited to variable rate work could work as a preparer or addresser.

Simmons contends that without the preparer and addresser positions, the document preparer has only 30,000 jobs nationally. Dkt. 17, at 14–15. But the court need not decide whether the 30,000 document preparer jobs are alone significant, because the court has rejected the argument that Simmons would be incapable of performing the preparer and addresser jobs.

---

[4] Revised Handbook for Analyzing Jobs, Chapter 10, page 4; available at https://skilltran.com/index.php/support-area/documentation/1991rhaj.

And Simmons does not dispute that the three positions, taken together, are available in significant numbers.

In sum, the VE's testimony did not conflict with the Dictionary or the SCO, and testimony that went beyond the information in the Dictionary and SCO was adequately explained. The ALJ's findings based on the vocational expert's testimony are supported by substantial evidence.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered August 10, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge